(98 South. 26)

**BELTONA COAL & MINING CO. v. HAWKINS, Tax Collector. (6 Div. 749.)**

(Supreme Court of Alabama.    Oct. 18, 1923. Rehearing Denied Nov. 29, 1923.)

**1. Taxation ⬅309—Assessment defined.**

An assessment, which is quasi judicial, consists in making out a list of taxpayer's taxable property, and fixing its valuation or appraisement.

**2. Taxation ⬅334—Where lands and improvements not listed separately, adjuster may correct.**

Where the taxpayer fails to list, and the assessor fails to enter on the returns, the lands and improvements separately, as required by General Revenue Law, §§ 44, 47, 52, 53, the adjusters, under sections 83, 87, may correct the error, and enter the valuations separately.

**3. Taxation ⬅332—Sufficient description of improvements, in listing them and lands separately stated.**

In listing lands and improvements separately, the form of description given in General Revenue Law, § 50, applying to the lands, such general description of the improvements as will reasonably show their character and extent as an element of value will suffice, and it need not be shown on what portions of the lands they are located.

Appeal from Circuit Court, Jefferson County; John C. Carmichael, Judge.

Action by the Beltona Coal & Mining Company against James F. Hawkins, as Tax Collector of Jefferson County, to recover taxes paid under protest. From a judgment for defendant, plaintiff appeals. Affirmed.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellant.

The improvements added by the adjusters were included in the real estate assessment, and the statute does not authorize a severance. Acts 1919, p. 282; Purifoy v. Lamar, 112 Ala. 123, 20 South. 975; Tenn. & Coosa R. Co. v. E. Ala. R. Co., 75 Ala. 516, 51 Am. Rep. 475; Cooley on Taxation (3d Ed.) 749; McGee v. Salem, 149 Mass. 238, 21 N. E. 386. The action of the tax adjusters in altering, modifying, or changing the description of the property of the taxpayer was in excess of their authority, and rendered the assessment void. Acts 1919, p. 311, §§ 85, 86, 87; Elyton Land Co. v. Birmingham, 89 Ala. 477, 7 South. 901; Walker v. Chapman, 22 Ala. 116.

Harwell G. Davis, Atty. Gen., A. A. Evans, Sp. Asst. Atty. Gen., W. K. Terry, of Birmingham, and Jas. J. Mayfield, of Montgomery, for appellee.

It was the duty of the plaintiff, taxpayer, to make a full, true, and distinct statement to the assessor of all its real and personal property, and the board of adjusters had the right to make correct listing of the realty and improvements and place the value thereon. Acts 1919, p. 302, § 53; Id. p. 312, §§ 87, 89.

BOULDIN, J. This is a taxpayer's suit against the tax collector of Jefferson county to recover taxes paid under protest. The action is on the common count for money had and received. The taxpayer made return of its real estate to the tax assessor for the year 1920. It was listed by government numbers, and the taxpayer's valuation entered. The lands and improvements were not listed separately. The board of tax adjusters added a sheet showing a summary of the acreage of lands and a separate list of improvements. Valuations of the lands and of the improvements were entered separately, and the total footed as the adjuster's valuation of the real estate. Appellant insists that this added assessment of improvements by the tax adjuster was illegal and void, and seeks to recover the increased taxes paid thereon.

[1] The process of raising revenue by tax on property is in three parts, viz. the levy, the assessment, and the collection. The question here presented is the assessment.

"An assessment of a tax is a final listing of persons and property subject to the tax, with an official estimate of the value of the property of each for the purpose of the tax. It is the final step in the process of taxation, and the one which fixes a definite and enforceable liability upon persons and property for the amount of the tax." 37 Cyc. p. 987.

"Assessment is quasi judicial, and consists in making out a list of the taxpayer's taxable property, and fixing its valuation or appraisement." Perry County v. Railroad Company, 58 Ala. 546, 559.

[2] In making the assessment, it is the duty of the taxpayer to render to the assessor under oath a full and complete list of all his property.

"The land and improvements thereon must be separately listed." General Revenue Law, Acts 1919, p. 299, § 44.

It is the duty of the tax assessor to "particularly inquire of the said taxpayer as to the items of property," and enter the same on the proper blank assessment list. Section 47, p. 300. If the taxpayer does not perform his duty to meet the assessor and make his tax return, the tax assessor should make demand therefor. Section 52, p. 302. Upon such demand the taxpayer is required to forthwith make a return of his real and personal property, "with a correct description ⁂ ⁂ ⁂ of land and improvements separately." Section 53, p. 302.

At the same time the assessor is listing property, the county adjuster is required to proceed with the valuation and equalization of all taxable property. The valuation is entered on the tax lists "as returned by the taxpayer or otherwise listed for taxation." The adjuster should fix the value of the land and improvements, to be entered by the assessor on the land and lot book. Section 83, p. 310. The adjuster should "carefully examine and inspect all tax returns and assessments." If the taxpayer has failed to make a return or omitted any property, the adjuster is required to make up a return. Section 87, p. 312.

When the adjuster has completed his work and entered the valuations on the assessment lists, he shall certify to the correctness of the tax returns. These returns are then subject to public inspection in the assessor's office. Published notice is given that the adjuster has returned his report, that it is open to inspection, and that the adjuster will sit at the courthouse, beginning on the first Monday in June, to correct errors in the assessments or valuations. Section 88, p. 312. At the hearing the property owner may make objections to any "assessment or valuation," and upon evidence offered, the adjuster shall "correct the valuation or assessment," if error be found therein. Section 89, p. 313.

Under those provisions, the taxpayer, the assessor, and the adjuster are all charged with concurrent duties in course of the assessment of taxes. The proceeding is in fieri until the listing of the property is perfected, and the final valuation fixed by the adjuster. "The real or primary assessment is" fixed "by the latter official or board." Ceylon Co. v. Hawkins, 206 Ala. 246, 248, 89 South. 754. The taxpayer has a right to inspect the assessment, to see that his property has been properly listed, so that, on payment, his property shall be free from tax liens, and himself free from future calls for escaped taxes. He is likewise interested in a just valuation. For both these purposes he is given a hearing at a time and place fixed by law, with the right of appeal from the adjuster's finding at such hearing.

It seems clear that the adjuster has a supervisory power throughout over the listing of property. If errors are found, it is his duty to correct them. In the case at bar the taxpayer failed to list, and the tax assessor failed to enter on the returns, the lands and the improvements separately. This was an error or defect in assessment. The board of adjusters undertook to correct this defect. This, we think, they had full power to do.

[3] Section 50, p. 301, of the Acts of 1919, sets forth how real estate may be described in the assessment. This section is brought forward, without substantial change, from former statutes. Acts 1915, p. 405, § 38; Code of 1907, § 2113. The form of description given applies to lands. It does not show how improvements may or should be described separately.

It is conceded in this case that there was no purpose in the law to separate improvements from lands in such manner as to convert improvements into personalty under our tax system. In fact, the act (page 282) defines "real estate" to include all structures which would pass by a conveyance of the land. The purpose of listing and describing the lands and improvements separately is in aid of fixing a proper valuation for tax purposes. The value of the naked land is to be fixed. Then the value of the improvements. The two added make up the value of the real estate. The true value of the improvements is the increased value of the real estate by reason thereof.

In listing the improvements separately, such general description as will reasonably show their character and extent as an element of value will suffice. There is no need to show upon what portion of the lands the improvements are located. We conclude that the assessment in the case at bar, as corrected and completed by the board of adjusters, was valid.

The judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS. JJ., concur.