(91 South. 869)

**MOORING et al. v. STATE ex rel. BRASWELL. (3 Div. 548.)**

(Supreme Court of Alabama. Dec. 22, 1921.)

**1. Constitutional law ⬦47—In considering constitutionality, legislative intent must be considered.**

Where the constitutional validity of an enactment is under consideration, the first duty of the court is to ascertain the legislative intent of the enactment.

**2. Statutes ⬦206—In construing statutes, effect must be given to every provision, if possible.**

In construing statutes, all related parts and provisions thereof that may contribute to disclose the legislative intent should be considered, and operation and effect should be given to every portion, if fairly possible.

**3. Statutes ⬦205—Section of revenue law, construed in connection with other sections.**

Revenue Law, § 84, must be read in connection with other sections of the Revenue Law, particularly sections 88, 89, and 99.

**4. Taxation ⬦451—Taxpayers may make annual objection to assessed valuation of property, and when overruled may appeal.**

Under Revenue Law, § 84, providing that the assessment for taxation of real property made by a county tax adjuster or board of tax adjusters shall remain the taxable value for two years, in view of the annual duty of the assessor to publish a notice, and the prescription for the annual sitting of the adjusters to correct errors in valuations, according to section 88, providing for the method of fixing valuation, section 89, providing that the county tax adjuster or board of adjusters shall be in session annually, and section 99, giving the taxpayer whose objections to the valuations on his property are overruled by the adjusters an appeal to the commissioners' court or board of revenue, unless an agreed valuation is noted on the list, the taxpayer may object annually to the assessed valuation of his property, and, on his objections being overruled, may appeal to the commissioners' court or board of revenue and have a trial de novo.

**5. Taxation ⬦49, 51—Continuance of preceding year's valuation for a second year no violation of constitutional rights of a taxpayer who fails to object.**

Where a taxpayer fails to object to an assessment, placed on his property as provided by sections 89 and 99, in pursuance of Revenue Law, § 84, providing that the assessment shall extend for a two-year period, his rights under Const. 1901, § 214, providing that the tax levy shall not be greater than $65/100$ per cent. on the value of taxable property, and section 211, providing that taxes shall be assessed in exact proportion to the value of property, are not violated.

Sayre, J., dissenting.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Petition by the State of Alabama, on the relation of W. C. Braswell against John S. Mooring and the other members of the State Tax Commission for mandamus to require the said State Tax Commission to cause a revaluation of all the real estate in the state of Alabama. From a judgment overruling demurrers to the petition, respondents appeal. Reversed and remanded.

Harwell G. Davis, Atty. Gen., for appellants.

The state was improperly made the movant in this case. Section 635, Code 1907; 113 Ala. 85, 21 South. 210; 160 Ala. 163, 48 South. 1035; 175 Ala. 561, 57 South. 870. The constitutional provisions for an annual valuation is directory merely, and does not render valuations made under section 4 void. 7 Watts & S. (Pa.) 132; 34 Ala. 316; 181 Ala. 184, 61 South. 248. Enlich, Interpretation of Statutes, 754–756; 29 Md. 377; 65 Ala. 142; 172 Ala. 250, 55 South. 623. The provisions of section 84 of the Revenue Act, does not violate the provisions of the Constitution, requiring that property be assessed for taxation in proportion to its just and true value. 27 A. & E. Enc. of Law, 661; 8 Wash. 97, 35 Pac. 591; 18 Cal. 632; 19 Wis. 516; 129 U. S. 698, 9 Sup. Ct. 385, 32

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

L. Ed. 760; 16 S. C. 32; 45 S. C. 457, 23 S. E. 281; 26 Nev. 246, 66 Pac. 744; 64 Ala. 269; 71 Ala. 401. The assessment is final, unless attacked for fraud of lack of jurisdiction. 185 Ala. 482, 64 South. 110; 196 Ala. 450, 71 South. 427. An assessment is not void because arbitrary or excessive, if it can be corrected on appeal. 221 U. S. 328, 31 Sup. Ct. 590, 55 L. Ed. 753. The Revenue Act provides for correction or appeal. 203 Ala. 444, 83 South. 334; Acts 1919, p. 31, §§ 94, 104. There being a remedy by appeal mandamus does not lie. 168 Ala. 171, 52 South. 934; 178 Ala. 442, 59 South. 628. Mandamus will not lie to vacate excessive valuation. 202 Ala. 85, 59 Ala. 551.

R. B. Evins, of Greensboro, for appellee.

Brief of counsel did not reach the Reporter.

By direction of the court, McCLELLAN, J., delivers the opinion:

This is a proceeding by petition for mandamus, instituted by the state of Alabama on the relation of W. C. Braswell, a real estate owner and taxpayer in this state, against the State Tax Commission and the individual officers constituting its personnel. The prayer of the petition for the writ of mandamus, consistent with the theory of the amended petition's averments and design, is, in substance, that the State Tax Commission be required to exert its plenary supervisory power and authority over all subordinate (thereto) tax officers and tax agencies in this state to cause or to effect, through such officers or agencies or otherwise, this action:

"To inquire into, judicially ascertain, and fix the true and just value of the real property in their respective counties in this state (whether heretofore inspected and valued by them for some other tax year or not) for taxation for the tax year commencing October 1, 1920, and as of October 1, 1920. * * *"

It appears from the amended petition's averments that since the valuation as of October 1, 1919, for that tax year (1920), commencing on that date, relator's real property, as well as that of many thousands of other realty owners in this state, has greatly decreased in value; that such decreases in value had registered their effects on October 1, 1920, the date as of which the present tax year commences; that such decreases have resulted from causes other than those enumerated in section 84 (to be quoted) of the Revenue Act of 1919 (Gen. Acts, p. 311); and that, notwithstanding relator's seasonable demand upon the State Tax Commission to exert its stated plenary supervisory power to cause all subjects of taxation to be assessed, as of October 1, 1920, "in exact proportion to the true and just value thereof" (Rev. Law 1919, § 138), the State Tax Com-

mission has "failed or refused to make such valuation or to require the same to be done." It further appears from the averments of the relator's petition, and Exhibit A thereto, that on June 6, 1920, the State Tax Commission issued to the tax adjusters and boards of tax adjusters this "circular No. 102," presently immaterial parts of it being omitted:

"To Tax Adjusters and Boards of Revenue or Courts of County Commissioners:

"Section 84 of the Revenue Act of 1919 provides that the value of property when assessed after inspection by the tax adjuster shall remain the same for two years. Under this provision generally valuations for 1921 will be the same as for 1920, and on account of this the question has arisen whether a taxpayer has the right to appeal in such cases to the commissioners' court or board of revenue. This question was referred by the commission a few days ago to the Attorney General, and we are in receipt of an opinion from the Attorney General to the effect that the taxpayer has this right of appeal.

"However, when a case comes for trial before the commissioners' court or board of revenue no question of valuation can be inquired into except such question as may have arisen by reason of those changes in the property itself which are specified in section 84. For instance, if a house has burned down or one has been added the court can inquire into and decide as to the value of the improvements destroyed or added, and make the proper adjustment on account of this change in the property. In no case can the court raise the general question of the value of the property. That value must, in all cases remain the same for 1921 as in 1920, excepting as explained above.

"In the trial of these cases before the commissioners' court or board of revenue the adjuster should simply show that the 1921 valuation is the same as for 1920, and insist that the court has no legal authority to do anything more than carry out the law. If, in any case, the court undertakes to alter the value in the least, except as to changes in the property as explained, such case should be appealed to the circuit court, and no attempt should be made to offer evidence as to values other than values in the improvements destroyed or added."

Section 84 of the Revenue Law of 1919, to which reference was made in the above-quoted circular No. 102, reads:

"Whenever any assessment of real property shall have been made by the county tax adjuster or board of tax adjusters, after personal inspection thereof, the value thus fixed shall be and remain the taxable value of such property for a period of two years dating from the first day of October preceding, and the county tax adjuster or board of tax adjusters shall not be required to again view, inspect, value and equalize the same during such two-year period, unless a revaluation and equalization shall be made by order and direction of the State Tax Commission, in which event the valuation thus fixed shall be and remain the taxable value of such property until the next biennial period of assessment, or unless there

shall be a change in the value of such real property, or the building, structures, or improvements thereon caused either by the destruction of or damage to said buildings, or by the erection or construction of new buildings, structures or improvements, or by the removal of minerals from said lands or by the removal of turpentine from the timber on said lands, or by cutting the timber therefrom, in which event the assessment shall be increased or reduced to the extent only of the increase or reduction in the value of such real property by reason of the changes above named."

As appears from the averments of the petition, the matter of valuation or assessment in question is that of the second year of the biennial period described in section 84, supra. The relator's· theory—in many respects like that sanctioned by the State Tax Commission's "circular No. 102" (quoted before)—is that the provisions of section 84 contemplated but one assessment or valuation, upon inspection by adjusters, in two tax years, except in the particular, limited circumstances therein stipulated: that valuations fixed for the first tax year of the biennial period were made, by the pure legislative mandate of section 84, to persist as and for the valuations of the second tax year of the biennial period, unless this effect of the mandate was obviated by the exceptional action or circumstances stipulated in section 84; and that, section 84 being so designed, having that operation, and being administered by the supervisory, controlling authority of the State Tax Commission, as illustrated by circular No. 102, consistent with this intent, section 84 is offensive to section 214 of the Constitution of 1901, and also to section 211 of the Constitution—either or both of which, it is contended for relator, preclude a valid enactment to effect or to enforce a legislative mandate projecting a valuation, ascertained and fixed for a preceding year, as and for the valuation for the succeeding tax year, without affording the taxpayer an opportunity to have an annually recurring judicial hearing and ascertainment of the value of his property for the purposes of taxation. These sections of the Constitution are as follows:

"214. The Legislature shall not have the power to levy in any one year a greater rate of taxation than sixty-five one hundredths of one per centum on the value of taxable property within this state."

"211. All taxes levied on property in this state shall be assessed in exact proportion to the value of such property, but no tax shall be assessed upon any debt for rent or hire of real or personal property, while owned by the landlord or hirer during the current year of such rental or hire, if such real or personal property be assessed at its full value."

The court below awarded the writ of mandamus, holding section 84 offensive to the Constitution. The State Tax Commission appeals.

The State Tax Commission in the trial court, and again in this court, insists, among other things, that mandamus is not the appropriate remedy nor the efficient legal instrument to invoke the relief sought, and that awarded by the court below; that relator was without right to employ the name and authority of the state of Alabama in this proceeding; and that the relator is not shown by the averments of the petition to have such an interest in the subject of the inquiry or the result of his impleading as to warrant him in bringing into question the constitutionality of section 84 of the Revenue Law of 1919.

The view and conclusion prevailing in this court renders unimportant the stated contentions made for the appellant. The court pretermits their consideration and decision. For the purposes of present review, and that only, this court has proceeded to consider and to decide this primary, material question involved in the inquiry, · whether the court below was justified in awarding the writ of mandamus against the State Tax Commission. To avoid misapprehension, the court expressly disavows any purpose to consider or to approve the remedy or procedure adopted by the relator to have determined the right of the state or the relator to the writ sought in the petition.

[1] Where constitutional validity of an enactment is the question presented for decision, the primary duty is the judicial ascertainment of the operation and effect—the legislative intent—of the enactment assailed. Upon the judicial determination of the enactment's operation and effect, the second branch of the inquiry, of constitutionality vel non, then arises, and the validity or invalidity of the enactment assailed is to be adjudged by its conformity vel non to provisions of the organic law.

The first question is whether the Revenue Act of 1919 prescribes, through legislative mandate without opportunity for judicial review or revision, valuations of real property fixed, after inspection by adjusters, for the tax year 1919–20 as and for the succeeding tax year 1920–21, or, in other words, whether the Legislature has (except in stipulated, limited instances) indelibly impressed upon inspected real property valuations ascertained and fixed for the tax year 1919–20 as the valuations for the second of the two-year tax period, viz. for the tax year 1920–21. This question, at this stage, is one of statutory construction.

The prevailing system for the assessment of properties for state and county taxation is, for present purposes, that established by the Revenue Law of 1919 (Gen. Acts, p. 296 et seq.). To state the process in general terms: Under this system the tax assessors are required each and every year to list all the

real and personal property assessable in their respective counties and to set down the first year (1919–20) in the assessment lists an "estimate" of the values of the respective subjects of taxation, this for the advice only of the adjuster or board of adjusters; the taxpayer's "estimate" of the separate value of properties on the assessment list being given to and received by the assessor without the taxpayer's oath. For the first year (1919–20) the adjuster or board of adjusters ascertain and fix the respective values of properties so listed when the assessor completes the annually prepared assessment book, deposits it as required, and publishes notice of its completion, its availability for inspection by every taxpayer, along with the published advice that the adjuster or board of adjusters will sit each and every year to correct any errors in valuations. Valuations, for purposes of taxation, are initially ascertained and fixed by the adjusters, subject to revision provided by law on annual hearing, at stated annual times, by the adjuster or board of adjusters; and from the action of the adjusters an aggrieved, objecting taxpayer may appeal to the commissioners' court or board of revenue, where the trial is de novo. From the valuation judgments of the latter court, sitting annually, at a stated period, to hear such appeals, either aggrieved party, the state or the taxpayer, may appeal to the circuit court, where, also, the trial is de novo.

Such was the process with respect to the valuation for the first of the tax years, viz. that of 1919–20. Does the Revenue Law of 1919 prescribe to a materially different effect with respect to the second of the two tax years, viz. that of 1920–21?

[2, 3] In construing laws it is the judicial disposition, as well as duty, to consider all related parts and provisions thereof that may contribute to disclose the legislative intent, and in so doing to give operation and effect to every provision, if fairly possible. It is never supposed that the Legislature intended in one act to introduce contradictory provisions; and it is never so declared unless that conclusion is required by the terms employed. It is the office of construction to reconcile inharmony of legislative terms, if that may be done without any assumption opposed to the language used. Considered alone—dissociated from other provisions of this Revenue Law—section 84 appears susceptible of this interpretation of its design: To make valuations of real property, fixed by the adjusters "after personal inspection," persist through and for the second year without reconsideration of the valuation so fixed, unless revaluation and equalization is ordered by the State Tax Commission, or unless changes, increases, or decreases in values of particular real estate is caused by the intervention of one, or more of the circumstances specified in section 84. Such a segregated consideration of the provisions of section 84

would permit the attribution to its provisions (alone) of an intent to perpetuate, through statutory mandate, for the second year's valuation, the valuation fixed by the adjusters (unreversed on appeal), except in the limited events defined in section 84. But that contracted basis for the ascertainment of the legislative intent cannot be accepted or acted upon in view of the familiar canons of construction to which we have alluded. The provisions of section 84 must be read in connection with other sections of the Revenue Law, particularly sections 88, 89, and 99.

[4] Section 88. Notwithstanding this section appears in its opening provisions to refer to the process whereby adjusters affixed the valuation, which might well be referable to the first year of the biennial period, the annually recurring duty of the assessor to publish the notice therein described, and the prescription for the annual sitting of the adjusters "to correct any errors * * * in the valuations"—the subject of this notice being the completed assessment lists on which must be entered the valuations of all taxable properties listed—contribute to support the view, more pointedly expressed, however, in section 89, that this occasion, its availability and service to the taxpayer and the public advice the notice gives of its annual recurrence, was not intended by the Legislature to be restricted to the first year of the biennial period, or to exclude the correction of "any errors in valuations" by reason of causes other than those enumerated in section 84, intervening subsequent to October 1, 1919, and that were ascertainable in point of fact as of the tax date of the current year, October 1, 1920. The phrase "any errors in assessments or valuations" is comprehensive. Its comprehensiveness coincides with the unmistakable expression, in this connection, to be noted in section 89.

Section 89. This section provides for the annual sitting, at stipulated periods, of the adjusters to hear objections by taxpayers to valuations fixed by the adjusters. It refers to the same sittings to which section 88 refers in requiring the giving of notice by the tax assessor. This section (89) does not discriminate between the two years of the biennial period. On the contrary, in indubitable language, manifesting, we think, a plain intent, this section assures the taxpayer, desiring to object to a valuation for any causes whatsoever, an opportunity to present his case against "any assessment on valuation theretofore made," the tax year preceding (1919–20) being of course an assessment or valuation "theretofore made." This expression is completely comprehensive; and, when considered in connection with provisions of section 84, admit of no reasonable doubt that it was the legislative purpose to afford this opportunity and hearing to the objecting tax-

payer for and during either year of the biennial period.

Section 99. This section assured and assures the objecting taxpayer, whose objections are overruled by the adjusters, an appeal to the commissioners' court or board of revenue, unless an agreed valuation is noted on the list. The language in its final clauses is obviously confused, since it is not possible that the Legislature purposed to commit the availability of the appeal thereinabove positively assured the objecting taxpayer to the mere act of the adjuster in noting on the list the overruling of the objection to valuation the appeal itself was intended to bring to a trial anew. The entire system leaves in no doubt the legislative intent to assure appeals to the nonagreeing taxpayer, whose objection is overruled. The words "original valuation," in section 99, were not designed to limit appeals; nor were those words employed to contradict the elsewhere manifest legislative intent to assure to the taxpayer an opportunity to object to valuations once in every year; and, failing before the adjuster, to have his appeal and a trial de novo.

It thus appears that to accept the stated construction of section 84 is to cast its provisions in opposition to the other provisions of the Revenue Law of 1919. This contradiction is to be avoided in construction, if reasonably possible. Contrasting section 84 with the stated assurance of section 89 for an unrestricted annual opportunity of the taxpayer to object to a valuation, regardless of the cause of changes in value, and to have, in every year, a hearing on his objections before the adjuster or board of adjusters, and an appeal if his objection is overruled, and there is no agreement on valuation, provisions of section 84, inconsistent with the other sections of the Revenue Law, can be reasonably harmonized in construction. The feature of section 84 providing that the value fixed the first year of the biennial period should persist as and for the second year, without reinspection or reconsideration of the particular property's value, was intended to apply alone to cases where there was no objection by the taxpayer to the continuance, during the second tax year, of the valuation initially fixed by the adjuster or board of adjusters for the preceding year. The other features of section 84 are necessarily allied to that stated, and sanction and justify this interpretation of their effects: (a) That the two-year provision was made subject to the State Tax Commission's discretionary power to order a revaluation and equalization, "in which event" the revaluation thus made should be the valuation "until the next biennial period of assessment," at which time, as in any previous year (section 89), the taxpayer may object and have a hearing, and, failing before the adjuster or board of adjusters, an appeal; and (b), by the other feature of section 84, that the antecedent (there-in) provision for a continuance of the valuation as and for the second year was made subject, also, to the condition that changes in value, increases, or decreases, for the causes specified in section 84, might intervene, whereupon the provision for the persistence of the first year's valuation should yield to the new circumstances enumerated in that feature of section 84. These conditions, defined in section 84, were interposed and addressed to the two-year provision of that section, to cases where the taxpayer interposed no objection, not to the unrestricted, assured annually available right of taxpayers to object to, to question, and to have judicially determined, at an appointed annual period, "any valuation theretofore made."

[5] It therefore results that through the Revenue Law of 1919 the Legislature did not undertake to make biennial, rather than annual, assessments or valuations of real properties in this state. Under this system the realty taxpayer has afforded him an annually recurring opportunity to object to valuation —of which occasion published notice is given in each year—and a hearing assured the taxpayer who conceives that changes in value, for any cause, entitle him to a reduction in the valuation for the second year of the biennial period. If he remains inactive, does not object as the law gives him annual opportunity to do, the conditional continuance of the preceding year's valuation as and for the second year, as provided in section 84, neither involves nor inflicts any impairment or violation of the constitutional rights of such quiescent taxpayer.

It also results from the considerations and conclusions stated in construction of the present Revenue Law that circular No. 102, quoted ante, issued by the State Tax Commission June 6, 1920, to adjusters throughout the state, proceeded from and on an erroneous interpretation of the Revenue Law of 1919, particularly section 84.

The judgment of the court below in awarding the writ of mandamus is affected with error. It is reversed; and judgment will be entered in this court denying the writ sought and dismissing the petition.

Reversed and rendered.

ANDERSON, C. J., and SOMERVILLE, GARDNER, THOMAS, and MILLER, JJ., concur.

SAYRE, J. (dissenting). The petition in this cause proceeds upon the theory that section 84 of the act approved September 15, 1919 (Acts 1919, pp. 282–450), is unconstitutional and void because it provides that the values of real property fixed by the county tax adjuster or board of tax adjusters "shall be and remain the taxable values of such property for a period of two years dating from the 1st day of October preceding, and the county tax adjuster or board of tax

adjusters shall not be required to again view, inspect, value and equalize the same during such two-year period"; in other words, because it provides for a biennial valuation of real property, and provides, in effect, that there shall be no annual valuation except that in certain contingencies individual properties may be revalued. These exceptions affect this case only as furnishing indicia of interpretation. It cannot be contended that real property in general has been affected by them. The method of approach adopted by the majority of the court amounts to a tacit admission that a statute providing for biennial valuations and excluding annual valuations would be unconstitutional, for otherwise, that is, if there were any ground whatever on which to base a judgment that such a statute is within legislative competency, the obvious, proper, and easy thing to do would be to say so. The court avoids the difficulty presented by a process of construction which in my judgment wrests the language of section 84 from its only possible meaning, thereby imposing upon the section a meaning wholly foreign to its language and wholly different from what the Legislature intended. I think it may be said without impropriety as a matter of recent historical fact, perfectly well understood by every person in the state who took the least notice of what went on in the Legislature, that the Legislature did intend just what it said, to wit, that the value thus fixed, i. e., in the first year of the biennial period, should be and remain the taxable value of the property for a period of two years, not again to be reviewed during such period. It may be possible in some other of the ways suggested in the brief of the Attorney General to get away from the relief here sought, but I feel certain it cannot be done by reference to other parts of the statute. There are provisions for the annual hearing of objections, but it seems so clear that such provisions relate to the first assessment or to cases falling within the special exceptions provided by section 84, and were not intended to derogate from the clear and emphatic provision of that section, that I shall not argue the matter further. I can see no logical or legal way to a concurrence in the opinion of the court in this case, much as I dislike to be out of harmony. In my judgment the State Tax Commission interpreted the act in precise agreement with the legislative intent.